UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **Sidney Coulter Benton,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**TransUnion, LLC,** )<br>)<br>**Defendant.** )<br>_____ ) | Civil Action No.: 3:24-cv-01049-JDA<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. This is an action brought by Plaintiff, Sidney Coulter Benton, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8.     Venue is proper in the Columbia Division because the Plaintiff resides in Richland County and the Defendant transacted business in this division.

## PARTIES

9.     Plaintiff, Sidney Coulter Benton, is a resident and citizen of the State of South Carolina, Richland County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.    Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.    Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14.    The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. On or about March 26, 2023, Plaintiff received an alert from Credit Karma of a new collection account being reported on her TransUnion credit report. The collection account was reported by National Credit Systems for an unpaid balance with Polo Village Apartments located at 1270 Polo Road in Columbia, South Carolina, in the amount of $7,509.00. Plaintiff has never resided at Polo Village Apartments on Polo Road. Plaintiff has lived at her current residence on Forest Drive in Columbia, South Carolina, for the past three years.

16. On or about April 5, 2023, Plaintiff went to the City of Forest Acres Police Department and filed an Incident Report stating that an unknown individual had impersonated her and obtained an apartment in her name at the Polo Village Apartments. The incident report was then forwarded to the Richland County Sheriff's Department due to the offense occurring outside of the city limits for Forest Acres.

17. On or about April 6, 2023, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

18. On or about June 22, 2023, Plaintiff obtained a copy of her TransUnion credit report through annualcreditreport.com. When Plaintiff reviewed the report, she discovered it was riddled with errors and inaccurate information.

19. On or about June 30, 2023, Plaintiff sent a written dispute letter ("First Dispute") to TransUnion wherein she disputed multiple accounts and personal information reporting incorrectly on her credit report. Specifically, Plaintiff disputed a National Credit Systems, Inc. collection account 50222** for Polo Village Appts, with an unpaid amount of $7,509,

as not her account as she had never lived at Polo Village Apartments. Plaintiff also disputed a Receivable Solutions LLC, account 3101xxx, reporting as a collection account for a past due medical bill she did not owe. Finally, Plaintiff disputed an address she had never lived at, companies she had never been employed with, phone numbers that were not hers, and several variations of her name which were incorrect. In her letter, Plaintiff specifically provided TransUnion her full social security number, date of birth, and address.

20. On or about July 12, 2023, Defendant received Plaintiff's First Dispute.

21. On or about August 1, 2023, Plaintiff received the results of Defendant's alleged investigation into her disputes wherein both the National Credit Systems, Inc. account, and the Receivable Solutions account were verified as accurate. As a result, both disputed accounts continued to be reported on Plaintiff's TransUnion credit report. Additionally, the disputed address continued to be reported on Plaintiff's credit report.

22. On or about August 30, 2023, Plaintiff sent a second dispute letter to TransUnion ("Second Dispute") in which she again disputed both the National Credit Systems, Inc. collection account 50222** for Polo Village Appts, with an unpaid amount of $7,509, and the Receivable Solutions LLC, account 3101xxx, as not her accounts. In addition, Plaintiff requested that, should Defendant not delete the disputed accounts, it send her copies of each and every document, bill, signature page, and anything else it received in order to keep the accounts on her credit report.

23. Defendant received Plaintiff's Second Dispute on September 5, 2023.

24. On or about September 11, 2023, Defendant sent Plaintiff a letter in response to her Second Dispute stating that it had previously completed an investigation of her dispute of

the National Credit Systems account, and therefore, would not be reinvestigating her dispute.

25.     That same day, Defendant sent Plaintiff a second letter stating it was in the process of investigating Plaintiff's dispute, but needed to verify Plaintiff's address before it could mail anything to her.  Specifically, Defendant requested that Plaintiff provide them two forms of identification, which Plaintiff provided.

26.     On or about September 14, 2023, Plaintiff received the results of TransUnion's alleged investigation into her Second Dispute.  These results confirmed that TransUnion did not investigate Plaintiff's dispute of the National Credit Systems account.  Additionally, the results showed that TransUnion was now reporting two Receivable Solutions LLC accounts with the same account number and different balances, and that both were verified as accurate.

27.     On or about December 15, 2023, Plaintiff was denied her application for a bigger apartment within the same complex.  As a result, Plaintiff was not able to get the apartment she desired in her name.

28.     On or about January 8, 2024, Plaintiff sent a third dispute letter to TransUnion ("Third Dispute") in which she disputed both of the Receivable Solutions LLC, accounts - #3101**** as not hers.  Plaintiff also again disputed the National Credit Systems, Inc. collection account xxx2294 for Polo Village Appts, with an unpaid amount of $7,509, as a fraudulent account.  In support of her dispute, Plaintiff attached a copy of the police report she filed regarding the fraud.  Finally, Plaintiff requested that, if Defendant refused to delete these disputed accounts, that Defendant provide her copies of each and every

6

document, bill, signature page, and anything else it received in order to keep the accounts on her credit report.

29. Defendant received Plaintiff's Third Dispute on January 11, 2024.

30. On or about January 12, 2024, Defendant sent Plaintiff a letter stating they needed proof of Plaintiff's current mailing address. This letter also stated that Plaintiff's "identity theft-related request" was not valid. Finally, Defendant requested Plaintiff complete Defendant's Identity Theft Victim Assistance Affidavit.

31. On or about January 12, 2024, Defendant sent a second letter to Plaintiff stating she was entitled to a copy of her rights under the FCRA as part of the fraud resolution process.

32. On or about February 7, 2024, Plaintiff received the results of TransUnion's alleged investigation into her Third Dispute. In the Investigation Results, TransUnion stated that National Credit Systems had verified the account as accurate. TransUnion accepted that verification despite Plaintiff's provision of a police report, and therefore, the National Credit System account remained on Plaintiff's credit report. The two Receivable Solutions accounts were not listed in the Investigation Results at all, so it is clear that TransUnion did nothing to investigate Plaintiff's disputes of those two accounts. Upon review of her updated credit report, Plaintiff discovered that not only was the fraudulent National Credit Systems Account still reporting, but a new fraudulent account, Hunter Warfield Inc., account #93971**, had been added as a collection account for Vantage at Wildewood with a past due amount of $5,153.

33. On February 12, 2024, Plaintiff sent Defendant a copy of her driver's license, a paystub as proof of her identity and address, and a copy of the police report.

34. On February 29, 2024, Plaintiff sent a fourth dispute letter to TransUnion ("Fourth Dispute") again disputing the National Credit Systems account as fraudulent and also disputing the Hunter Warfield account as fraudulent. With her dispute, the Plaintiff provided TransUnion another copy of the police report regarding the National Credit Systems account.

35. Despite Plaintiff's multiple disputes, which included providing a copy of a valid police report to document the fraud, Defendant continues to refuse to block the fraudulent information from Plaintiff's TransUnion credit file and continues to incorrectly report multiple fraudulent accounts as belonging to Plaintiff.

36. Defendant failed to make a reasonable investigation into Plaintiff's disputes.

37. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

38. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly.

8

The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

39. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

40. The Plaintiff adopts the averments and allegations of paragraphs 15 through 39 hereinbefore as if fully set forth herein.

41. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

42. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

43. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage

9

to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, denial of an apartment, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

44. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

45. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

46. The Plaintiff adopts the averments and allegations of paragraphs 15 through 45 hereinbefore as if fully set forth herein.

47. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

48. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

49. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

50. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, denial of an apartment, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

51. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

52. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

53. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

               */s/ Penny Hays Cauley*
               Penny Hays Cauley, Fed. ID No. 10323
               Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

               */s/ Penny Hays Cauley*
               Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169